UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

────────────────────────────

DERRICK ANDERSON

               Plaintiff,

v.

Deputy JOHN LALLEY, Deputy DAVID
FRANCKOWIAK, Sheriff TIMOTHY B. HOWARD,
County Executive CHRIS COLLINS

               Defendants.

────────────────────────────

              AMENDED
DECISION AND ORDER

Case # 12-CV-6355-FPG

At all times relevant for this Order, Plaintiff Derrick Anderson was an inmate at Erie County Holding Center in Buffalo, New York. He brings this action *pro se* under 42 U.S.C. § 1983 for damages against Deputies John Lalley and David Franckowiak, Sheriff Timothy B. Howard, and former County Executive of Erie County Chris Collins. Sheriff Timothy B. Howard and former County Executive Chris Collins now move in separate motions to dismiss the Complaint. ECF Nos. 10, 27. Plaintiff has moved for an extension of time to file a response to Collins's motion to dismiss (ECF No. 28), and he has also filed a response to Collins's motion to dismiss (ECF No. 29).

## BACKGROUND

The facts of this case are straightforward. John Lalley and David Franckowiak were deputies at the Erie County Holding Center (the "Holding Center") on December 29, 2010. On that date, Plaintiff alleges that Lalley and Franckowiak entered a shower room at the Holding Center, took down a shower curtain, took the rods out of the shower curtain, and "jammed" the

rods into the shower drain.  ECF No. 1, at 3.  The deputies left the shower room without posting warning signs about the hazardous condition they created.  *Id.* at 6.  When Plaintiff then took a shower, water sprayed everywhere as a result of the missing shower curtain and he slipped and fell.  *Id.* at 3.  He sustained injuries including bulging and/or herniated discs in his back, which developed into neuropathy (*i.e.*, chronic back pain due to damage to the nervous system) and degenerative disc disease.  *Id.*  He also sustained a concussion, swelling in the back of his head, nausea, vomiting, dizzy spells, and mental and emotional distress.  *Id.* at 3–4.  Plaintiff claims that Defendants violated his Fourteenth Amendment rights through deliberate indifference to hazardous conditions in the shower room.[1]  He seeks money damages under § 1983.  *Id.* at 12.

A brief review of the procedural history of this case is necessary to rule on some of the pending motions.  The Complaint arises out of a case bearing Docket Number 6:12-cv-6039 that Plaintiff previously filed in this Court.  In that case, Plaintiff complained of a separate incident where nurses at the Holding Center failed to supply him with diabetes medication and then falsified paperwork to make it appear as though they gave him the medication.  Plaintiff filed multiple amended complaints in that case, and one of those amended complaints became, by Order of Judge Skretny (Case No. 6:12-cv-6039, ECF No. 10), the Complaint in this case.  The Complaint in this case concerns only Plaintiff's slip-and-fall in the shower.

---

[1]     Plaintiff has asserted a variety of legal claims in his Complaint and other submissions, including deliberate indifference to his health and safety, failure to protect, and unlawful search and seizure.  He has asserted these claims under both the Eighth and Fourteenth Amendment.  Based on the facts and Plaintiff's status as a pre-trial detainee, it is clear to the Court that Plaintiff's § 1983 claim is properly construed as a deliberate indifference claim under the Fourteenth Amendment.  *See Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) (citation omitted) ("[T]he court's imagination should be limited only by [the plaintiff's] factual allegations, not by the legal claims set out in his pleadings.").

## DISCUSSION

The Court now turns to each of the pending motions. The Court will address former County Executive Collins's Motion to Dismiss before addressing Sheriff Howard's Motion to Dismiss. It will then discuss the claims against Deputies Lalley and Franckowiak.

### I.   Defendant Chris Collins's Motion to Dismiss the Complaint

Chris Collins, the former County Executive of Erie County, has moved to dismiss the Complaint against him on several grounds. ECF No. 27. He asserts the Court lacks personal jurisdiction over him under Rule 12(b)(2), Plaintiff has insufficiently served process on him under 12(b)(5), and Plaintiff has failed to state a claim under 12(b)(6). *See* Fed. R. Civ. P. 12(b).

As a preliminary matter, Plaintiff moved for an extension of time to respond to Collins's Motion to Dismiss on May 27, 2014. ECF No. 28. That motion is GRANTED, and the Court has considered Plaintiff's response in the discussion below. Notably, the Plaintiff has labeled his subsequently-filed response a "Reply Motion to Grant Amended Complaint," but it is clear to the Court that this "Reply Motion" is simply a response to Collins's Motion to Dismiss.[2] ECF No. 29.

As a second preliminary matter, Collins has objected to the Court considering an Affidavit that Plaintiff submitted along with his response. ECF No. 29. The Affidavit of Derrick Anderson, *i.e.*, the Plaintiff himself, simply recites the facts he references in his Memorandum of Law. Collins argues that because the Affidavit is neither notarized nor sworn by Plaintiff to be true under penalty of perjury, it is void of evidentiary value. ECF No. 31, at 1–2. Notably, to support the argument that we cannot consider the "unsworn" Affidavit, Collins cites the W.D.N.Y. Pro Se Litigation Guidelines, a footnote from an S.D.N.Y. case that does not concern

---

[2]   Plaintiff's "Reply Motion to Grant Amended Complaint" was designated by the Clerk of Court as a "Motion to Amend Complaint." ECF No. 29. Thus, it is currently marked as a pending motion on our docket. For purposes of docket control, this motion is GRANTED.

a *pro se* litigant, and an Eighth Circuit case that he mistakenly labeled as a Second Circuit case. *Id.* The Court does typically require that affidavits be notarized or sworn to be true, but here, we relax those requirements as Plaintiff is proceeding *pro se*. Additionally, we observe that while it is true that Plaintiff did not have the Affidavit notarized, he does begin the Affidavit with, "Derrick Anderson, being duly sworn, deposes and says . . . ." So alternatively, the Court will construe Plaintiff's language liberally and assume the Affidavit is sworn. It has been considered in the discussion below.

As a final preliminary matter, the Court observes that Collins's Motion to Dismiss has resulted in a flurry of filings by both sides. Plaintiff sparked the flurry by filing a sur-reply (ECF No. 32), without asking for permission from the Court, as a response to Collins's Reply brief on the Motion to Dismiss. Collins then responded to this sur-reply (ECF No. 34), and Plaintiff filed yet another sur-reply to respond to Collins's response (ECF No. 35). Collins then wrote a letter to the Court asking it to disregard Plaintiff's latest sur-reply or, in the alternative, permit Collins to submit another brief in response. ECF No. 36.

Given that Plaintiff is proceeding *pro se*, the Court has granted him latitude and considered all of his sur-replies. Counsel for Collins should be placated by the fact that Plaintiff's two sur-replies appear to be substantively duplicative of his original response to Collins's Motion to Dismiss. Thus, the Court sees no need for Collins to make another submission on this Motion.

Plaintiff must follow the Court's rules on filing motions from this point forward. Specifically, Plaintiff must note the following: When a party makes a motion as Collins has here, the opposing party is allowed *one* response that should not exceed twenty-five pages. *See* L. R. Civ. P. 7(a)(2). The original moving party may then file one reply memorandum that should not

exceed ten pages. *See id.* The parties then *may no longer submit papers on that motion* without

asking the Court for permission. *See* L. R. Civ. P. 7(a)(6).

A. *Insufficient Service of Process Under Rule 12(b)(5) and Lack of Personal Jurisdiction Under Rule 12(b)(2)*

Collins first argues that Plaintiff's service on Collins was improper, therefore the claim

against him must be dismissed under Rule 12(b)(5). *See* Fed. R. Civ. P. 12(b)(5). Collins then

argues that because service was improper, this Court lacks personal jurisdiction over him. To

address these defenses, a reference back to the case bearing Docket Number 6:12-cv-6039 is

necessary.

In that case, Plaintiff filed a complaint on January 19, 2012 against a nurse, Sheriff

Timothy B. Howard, and Chris Collins after the nurse did not give Plaintiff his diabetes

medication. Case No. 6:12-cv-6039, ECF No. 1. Importantly for reasons that will soon become

apparent, Collins's term as County Executive of Erie County had already expired as of

December 31, 2011.

In April 2012, Plaintiff filed an amended complaint that, by order of Judge Skretny (Case

No. 6:12-cv-6039, ECF No. 10), became the Complaint in this case. Judge Arcara subsequently

directed the Clerk of Court to file the Summons and Complaint and, because Plaintiff is

proceeding *in forma pauperis*, to cause the U.S. Marshal to serve the Summons and Complaint

upon the Defendants. ECF No. 5. On November 30, 2012, Plaintiff mailed copies of the

Summons and Complaint via the U.S. Marshal to all the Defendants in this case, including Chris

Collins at "Erie County Holding Center, 40 Delaware Avenue, Buffalo, New York 14202." The

problem was that, as stated above, Chris Collins was no longer the County Executive of Erie

County. He also, apparently, never actually had an office at the Holding Center. Accordingly,

when the Summons and Complaint were forwarded from the Holding Center to the Erie County

Law Department, Assistant Erie County Attorney Kenneth Kirby received the process and deemed the service insufficient.  Attorney Kirby thus entered an appearance in this action only for Defendants Lalley, Franckowiak, and Howard.  ECF No. 6.

When this Court realized in January 2014 that Collins had not yet acknowledged service or answered the Complaint, it issued an Order directing Attorney Kirby to either provide an address for Collins or accept service for Collins.  ECF No. 21.  The Court then gave Plaintiff an additional ninety days, until April 9, 2014, to serve the Summons and Complaint on Collins.  *Id.* Attorney Kirby subsequently entered an appearance for Collins on January 22, 2014 and, accordingly, agreed to accept service on Collins's behalf.  ECF No. 22.  Unfortunately, Plaintiff did not serve Collins within the ninety-day period.  Thus, Attorney Kirby argues now that Collins was never properly served and, therefore, this Court lacks personal jurisdiction over Collins.

The Court will first address Collins's argument with regard to service of process.  At the outset, it must be observed that the service of process rules for  a *pro se* inmate proceeding *in forma pauperis* are relaxed.  The Second Circuit has been clear that the inmate is "entitled to rely on service by the U.S. Marshals" and, furthermore, the plaintiff's *in forma pauperis status* "shift[s] responsibility for serving the complaint from [the plaintiff] to the Court."  *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986) (citing Fed. R. Civ. P. 4(c)(2)); *Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996).  These principles generally mean that as long as the inmate "provides the information necessary to identify the defendant" to the U.S. Marshal, courts will find "good cause" to extend the period in which plaintiff must serve the defendant under the Federal Rules of Civil Procedure.  *Ruddock v. Reno*, 104 F. App'x 204, 206-07 (2d Cir. 2004) (citing Fed. R. Civ. P. 4(m)).  For this reason, this Court previously found "good cause" to extend, for an additional ninety days, the period in which Plaintiff could serve Collins.

Plaintiff failed to serve Collins within this period. This does not, however, absolve this Court of its "responsibility" to serve the Complaint on Collins. *See Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996). In line with this responsibility, the Court recounts that Attorney Kirby, the agent of Collins, has been on notice of this lawsuit for quite some time. Indeed, he has effectively been on notice of this lawsuit against Collins since April 2012 when Plaintiff originally tried to file the Complaint as an amended complaint in the preceding action. After the instant action was created by Judge Skretny's order, Plaintiff tried to serve Collins with the Summons and Complaint in late 2012, but Kirby declined to acknowledge the service. Finally on January 22, 2014, Attorney Kirby entered an appearance for Collins in this action, and from that point forward Collins has been, in every sense, on actual notice of the lawsuit.

The Court finds that on these facts, actual notice is sufficient notice. This accords with other courts in this Circuit, which have found that "[w]here a party contesting service of process has received actual notice, service requirements . . . are construed liberally." *St. John Rennalls v. Cnty. of Westchester*, 159 F.R.D. 418, 420 (S.D.N.Y. 1994). More specifically, deficiencies in service are "harmless error . . . when the party asserting deficient service has actual knowledge of the action and no prejudice results from the deficiency." *Id.* Here, Attorney Kirby has effectively been on notice of this claim since 2012, and he has been on actual notice, for purposes of this action, since January 2014. Judging from Attorney Kirby's persuasive arguments in Collins's Motion to Dismiss as to why Plaintiff fails to state a claim, Kirby has clearly had time to review and respond to the Complaint. Thus, no apparent prejudice results from the deficient service and so the deficient service is harmless error. Moreover, as indicated above, Plaintiff's *pro se* status and his prior attempt to serve Collins through the U.S. Marshal counsel against a strict application of the service rules. In sum, Collins's argument under Rule 12(b)(5) fails. *See* Fed. R. Civ. P. 12(b)(5).

Finally, Collins appears to argue that because service of process was insufficient, this Court lacks personal jurisdiction over Collins. Taking the argument on its terms, the Court's determination above that service was effective is also a determination that personal jurisdiction over the Defendant exists. More accurately, however, personal jurisdiction has simply never been in dispute in this case. There has never been any argument that Collins lacks minimum contacts with New York. *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement,* 326 U.S. 310, 316 (1945).

B. *Failure to State a Claim Under Rule 12(b)(6)*

Collins also argues that Plaintiff fails to state a claim under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). Collins puts forth two arguments in this regard. The first is that Plaintiff's claim is time-barred under the applicable statute of limitations.

The applicable statute of limitations for this § 1983 claim is three years from the date of injury. *See* N.Y.C.P.L.R. 214(5); *Owens v. Okure,* 488 U.S. 235, 249–250 (1989). Plaintiff's injury occurred on December 29, 2010 and the Complaint was filed within the limitations period on June 29, 2012. Accordingly, this claim is not time-barred. Collins's argument that the action is time-barred appears to actually be an advisement to the Court that if it dismisses the Complaint for insufficient service of process or lack of personal jurisdiction, the dismissal must be with prejudice due to the statute of limitations. As discussed above, the Court has not dismissed the Complaint on either of these grounds, so this argument is moot. Counsel for Collins is advised that, consistent with the service of process analysis for inmates proceeding *pro se*, the statute-of-limitations clock stopped running on Plaintiff's claim as soon as he delivered the Complaint to prison officials for mailing to the Court. *See Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir. 1993); *Houston v. Lack,* 487 U.S. 266, 270 (1988).

Collins's second argument engages with Plaintiff's claim on the merits.  In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the Complaint as true and draw all reasonable inferences in favor of the Plaintiff.  *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  To meet this standard, the factual allegations must permit the court "to infer more than the mere possibility of misconduct."  *Id.* at 679.

Plaintiff is proceeding *pro se*, so the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests."  *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).  "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citation omitted).  So while the court will draw the most favorable inferences that the complaint supports, it will not "invent factual allegations that [the plaintiff] has not pled."  *Id.*

Plaintiff brought this claim against Collins under 42 U.S.C. § 1983.  Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  In other words, to recover under this section, a plaintiff must show a violation of a federal constitutional or statutory right.

As a prerequisite to an award of damages under § 1983, however, Plaintiff must show that each defendant was personally involved in the alleged constitutional deprivation.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).  A complaint based on a violation under Section 1983 that does not allege the personal

involvement of the defendant is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814

F.2d 883, 886 (2d Cir. 1987) (internal quotations and citations omitted).

In short, Plaintiff must show in his Complaint that Chris Collins, who acted in a

supervisory capacity as the former head of the branch of county government that oversaw the

Holding Center, was personally involved in the shower-curtain incident. Personal involvement

of a supervisory defendant may be shown in one of five ways:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference to the rights of
> [plaintiffs] by failing to act on information indicating that
> unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

The Court has reviewed Plaintiff's detailed Complaint. Given Plaintiff's *pro se* status, it

has also exhaustively reviewed Plaintiff's supporting papers on this motion—which add up to

over one hundred single-spaced pages—for factual allegations supporting the notion that Collins

was personally involved here.

Even read in the light most favorable to Plaintiff, there are simply no allegations

supported by fact that Collins was personally involved in the shower incident. First, it is clear

that Collins did not directly participate in taking the shower curtain down. ECF No. 1 at 5; ECF

No. 29 at 20–21. Thus, in attempting to show that Collins was "personally involved" in the

incident in a supervisory capacity, Plaintiff repeatedly makes threadbare conclusory statements

such as the following:

> [Chris Collins and Timothy B. Howard] are both personally
> involved due to the fact that [they] (a) failed to remedy a
> continuing or egregious wrong after learning of the violations, (b)

> created a policy or custom under which the unconstitutional
> practices occur[r]ed or allowed such policy or custom to continue,
> or (c) w[ere] grossly negligent in managing subordinates who
> actually caused the constitutional violations, set forth herein.

ECF No. 1 at 5, 14; *see also* ECF No. 29 at 20–21; ECF No. 29-1 at 9. This is merely a recitation of the legal standard Plaintiff must use in alleging personal involvement in a § 1983 action. This standard appears to be copied verbatim from Judge Telesca's order in Plaintiff's preceding case, where Plaintiff was specifically told that he needed to allege personal involvement for each Defendant in order to avoid dismissal. Case No. 6:12-cv-6039, ECF No. 3, at 8.

Plaintiff recites other legal standards throughout his submissions by stating, for instance, without foundation that Collins's policies were the "moving force" of the constitutional violations (ECF No. 32, at 14; ECF No. 32-1, at 8–9) or that Defendants were "deliberately indifferent to my health and safety." ECF No. 1, at 5; *see also* ECF No. 29, at 23; ECF No. 29-1, at 16; ECF No. 32, at 16; 32-1, at 11; ECF No. 35, at 4. The most specific allegation, which reads as follows, does not strike the Court as plausible: "I have alleged that former Erie County Executive Collins created or allowed a specific custom or policy, relating to the taking down of shower rods and jamming them into drains of which I complain." ECF No. 29, at 23. It is difficult to believe that the County Executive of Erie County had even a tacit policy of allowing Holding Center officials to destroy shower rooms in the exact manner that the shower room was destroyed here.

In short, there are no facts supporting the notion that, prior to Plaintiff's injury, Collins had any knowledge of deputies taking down shower curtains. Additionally, there are no facts supporting that Collins had a policy relating to shower curtains or was grossly negligent or indifferent with regard to hazards in shower rooms. This appears to be a single isolated incident of deputies removing a shower curtain and, later that same day, Plaintiff taking the shower at

issue.[3]  It is implausible to think that Collins knew about this particular shower curtain, and based on the lack of evidence of prior shower slip-and-falls, nothing supports an inference that Collins even knew about these types of problems in shower rooms.

Notably, the Court does observe that Plaintiff makes repeated reference to a Department of Justice letter to Chris Collins, dated July 15, 2009.[4]  This letter is material outside of Plaintiff's Complaint, but given Plaintiff's *pro se* status, the Court has considered it in conjunction with the Complaint. *See Ceara v. Deacon*, 68 F. Supp. 3d 402, 410–11 (S.D.N.Y. 2014) (observing that courts can consider materials outside the complaint in a *pro se* context). The letter reports extensively on the DOJ's two-year investigation into confinement conditions at Erie County Holding Center and Erie County Correctional Facility.  The findings in the letter are, without a doubt, disturbing.  To summarize, the letter contains detailed allegations that officials at both facilities failed to prevent staff from inflicting serious physical and sexual abuse on inmates, failed to protect inmates from serious harm inflicted by other inmates, failed to provide adequate mental health and medical services to inmates, and failed to correct maintenance problems that posed a serious risk of harm to inmates.  The Justice Department then filed a lawsuit based on these findings against Erie County, specifically naming Chris Collins

---

[3]      The Court observes that the removal of the shower curtain and Plaintiff's shower at issue occurred on the same date by comparing pages of the Complaint, which includes as attachments the grievance forms Plaintiff submitted to Holding Center officials prior to filing suit. *See* ECF No. 1, at 3, 20.

[4]      Letter from Department of Justice, Civil Rights Division, to Chris Collins, County Executive of Erie County (July 15, 2009), *available at* http://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/Erie_findlet_redact_07-15-09.pdf [hereinafter DOJ Letter].
      For examples of Plaintiff's references to the letter, see ECF No. 29-1, at 11; ECF No. 35, at 3.

and Timothy B. Howard as defendants. *See United States v. Erie Cnty.*, 724 F. Supp. 2d 357, (W.D.N.Y. 2010). The parties entered into a consent decree to settle the lawsuit.[5]

The Court agrees with Plaintiff that the Justice Department's letter to Collins put Collins on notice that there was a litany of problems at the Holding Center. This notice has, conceivably, altered the analysis for some § 1983 claims by Holding Center inmates. For instance, the letter detailed numerous instances where inmates committed suicide or attempted suicide because, in part, officials did not remove materials in cells that facilitate suicide, such as "grab bars."[6] Accordingly, if an inmate attempted suicide in 2010 by using exposed grab bars in his cell and then filed a § 1983 action, that inmate might now have an easier time alleging that Chris Collins was personally involved in the attempted suicide. With this in mind, the Court searched the DOJ's letter for evidence that Collins could have been, at the very least, on any sort of notice of this type of hazard in the shower room.

The letter does reference physical conditions at the Holding Center that the DOJ deemed inadequate. For instance, the letter cites state regulators who previously found that the Holding Center had "overall poor sanitation" including "walls covered in toothpaste and cell bars covered in towels and sheets."[7] The letter also references food trays in cells and, in one instance, an inmate who was in a cell for at least a month with four inches of standing water due to toilet flooding.[8] Notably as well, in the section of the letter labeled "Recommended Remedial Measures," the letter advises Holding Center officials to "[e]nsure prompt and proper

---

[5]     *See* Press Release, Department of Justice, Justice Department Announces Agreement to Protect Prisoners from Life-threatening Conditions at Erie County, New York, Facilities (Aug 18, 2011), *available at* http://www.justice.gov/opa/pr/justice-department-announces-agreement-protect-prisoners-life-threatening-conditions-erie.
[6]     *See* DOJ Letter *supra* note 4, at 9–10.
[7]     *See id.* at 34–35.
[8]     *See id.* at 35.

maintenance of shower, toilet, and sink units."[9]   The toilet-flooding reference and these recommended remedial measures are the closest the letter comes to putting Collins on notice that deputies were removing shower curtains and thereby creating slippery shower room floors.

This is not enough to plausibly allege Collins had knowledge of these types of incidents, much less allege that he was personally involved in this incident.   Simply put, the letter cannot transform every single claim by an inmate at the Holding Center into one that shows Collins's personal involvement.   Here, deputies removed a shower curtain which caused the floor to become slippery with water.   Plaintiff took his shower on the exact same day that the deputies removed the shower curtain.   Neither Plaintiff nor the Justice Department has alleged that the shower room was previously hazardous in this manner.   Nothing supports the idea that Collins was personally involved in this incident and, thus, his motion to dismiss is GRANTED.

## II.      Defendant Timothy B. Howard's Motion to Dismiss the Complaint

Sheriff Timothy B. Howard is the Sheriff of Erie County.   Sheriff Howard has also filed a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   ECF No. 10.   In reviewing this Motion, the Court uses the same standards as recited above.   It accepts the factual allegations in the Complaint as true and draws all reasonable inferences in favor of the Plaintiff.   *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).   To survive the motion, the Complaint "must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

Plaintiff is proceeding *pro se*, so the Court again "construe[s] [the] complaint liberally and interpret[s] it to raise the strongest arguments that it suggests."   *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).   Accordingly, the

---

[9]      *See id.* at 48.

Court has again searched through Plaintiff's Complaint and numerous supporting papers for factual allegations that support his claim against Howard. "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

In a § 1983 claim, Plaintiff is again responsible for alleging, with supporting facts, that Sheriff Howard was personally involved in the constitutional deprivation. *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). Based on the face of the Complaint, Howard was not directly involved in or present during the removal of the curtain. ECF No. 1, at 3. Accordingly, Plaintiff must show that Howard failed to remedy a wrong, created a policy or custom that allowed the incident to occur, was grossly negligent in supervising the deputies, or otherwise exhibited deliberate indifference to the rights of Plaintiff. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Plaintiff has failed to show any of these bases for liability.

In the Complaint, Plaintiff draws no distinction between Timothy B. Howard and Chris Collins. They are named together, for instance, in the paragraph where Plaintiff purports to allege personal involvement: "They are both personally involved due to the fact that Chris Collins[] and Timothy B. Howard . . . (a) failed to remedy a continuing or egregious wrong . . . , (b) created a policy or custom . . . , or (c) w[ere] grossly negligent in managing subordinates . . . ." ECF No. 1 at 5. Later in the paragraph where Plaintiff is discussing both Howard and Collins, Plaintiff alleges that "[t]he defendants were deliberately indifferent to my health" and "[d]efendants subjected me to 'grievous harm.'" *Id.* at 5. There is, pointedly, nothing in the Complaint or any of Plaintiff's supporting papers that suggest that Howard's involvement in this incident is any different than Collins's involvement. Plaintiff states repeatedly that "Sheriff Timothy B. Howard[] and County Executive Chris Collins were operating the Erie County

Holding Center in an 'improper, negligent, reckless, and careless manner.'" ECF No. 1, at 5, 12–13; *see also* ECF No. 13, at 16, 31. As the Court has determined above, however, neither Howard nor Collins can be liable under § 1983 simply for "operating" the jail. *See Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim.").

Plaintiff's responses to Howard's Motion to Dismiss are also, in substance, identical to his responses to Collins's Motion to Dismiss. For instance, Plaintiff makes broad statements like, "Sheriff Howard[] and Erie County have repeatedly failed to prevent staff from creating unsafe conditions, in this case by destroying the shower room." ECF No. 13, at 36. But nowhere in any of Plaintiff's submissions does he cite any other example of Howard's "repeated[]" failure to prevent staff from creating this type of unsafe condition. Notably, Plaintiff does make isolated reference in his responses to Deputy Lalley spraying another inmate with a fire extinguisher, which caused the inmate to slip and break his hip. ECF No. 15, at 3. Even if this event were true, however, it does not put the Sheriff on notice that deputies were destroying shower curtains.

Other unsupported allegations about Howard's policies do not strike the Court as plausible: "Sheriff Howard condones a custom, policy, and practice of [] deputies, particularly Lalley[] and Fran[c]kowiak[,] deliberately taking shower curtains and rods [and] jamming the rods into floor drains . . . ." ECF No. 15, at 4. Again, it is difficult to believe that the Erie County Sheriff had even a tacit policy of allowing Holding Center officials to destroy shower rooms in exactly the same manner as the shower room was destroyed here.

In his responses to Howard's motion, Plaintiff also relies heavily on the DOJ letter referenced earlier. *See, e.g.*, ECF No. 13 at 20–24. Again, that letter focused on staff-on-inmate abuse, inmate-on-inmate abuse, inadequate medical and mental health care, and some

maintenance issues. As for the maintenance issues, the Justice Department did explicitly say, under the "Recommended Remedial Measures" heading, that officials must "[e]nsure prompt and proper maintenance of shower, toilet, and sink units."[10] These recommended measures, however, did not give Howard knowledge that deputies were destroying shower curtains and creating slippery shower room floors. It certainly does not transform every maintenance problem at the Holding Center into one that personally involves Sheriff Howard.

In sum, Plaintiff draws no distinction between Chris Collins and Sheriff Howard in terms of personal involvement. This Court sees no distinction either. Accordingly, for the same reasons that Collins's motiont to dismiss was granted, Sheriff Timothy B. Howard's motion to dismiss is GRANTED.

### III.    Section 1983 Claim Against Deputies Lalley and Franckowiak

Deputies John Lalley and David Franckowiak are the prison officials who destroyed the shower curtain, jammed the rod into the shower drain, and thus ultimately caused Plaintiff to slip and fall. ECF No. 1, at 3. These two Defendants did not file a motion to dismiss on this claim. However under 28 U.S.C. § 1915, as amended by the Prisoner Litigation Reform Act, the Court must dismiss an *in forma pauperis* complaint "at any time" if it determines, *inter alia*, that the action fails to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii). Given the facts of this case, the Court finds it necessary at this time to examine whether Plaintiff states a claim against Lalley and Franckowiak.[11]

---

[10]    *See id.* at 48.

[11]    The Court previously subjected this case to an initial screening pursuant to 28 U.S.C. § 1915 on October 30, 2012. In that Order, the Court did not give a justification for why this case passed scrutiny under § 1915, saying only: "[P]laintiff's complaint has been screened by the Court with respect to the 28 U.S.C. § 1915(e) criteria." ECF No. 5.

In light of the extensive briefing since October 30, 2012 and the brevity of that prior screening order, the Court feels it is appropriate to now revisit its responsibilities under § 1915.

In short, this case falls into a large family of cases of inmates bringing § 1983 claims after slipping and falling in, for the most part, showers. Courts routinely find that such slip-and-fall claims are mere negligence claims and not constitutional violations. *See, e.g.*, *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 113 (E.D.N.Y. 2011) ("[W]ater in the shower area does not deprive plaintiff of a basic human need and, thus, cannot as a matter of law give rise to a constitutional violation . . . ."); *Flowers v. City of New York (DOCS)*, 668 F. Supp. 2d 574, 578 (S.D.N.Y. 2009) ("Any claim against the City for the slip and fall that resulted in plaintiff's ankle injury—a garden variety tort—is not cognizable under Section 1983 . . . ."); *Edwards v. The City of New York,* No. 08 Civ. 05787, 2009 WL 2596595, at *3 (S.D.N.Y. Aug. 24, 2009) ("[C]ourts have held that allegations of wet conditions leading to a slip-and-fall will not support a Section 1983 claim even where, as here, the plaintiff also alleges that the individual defendants had notice of the wet condition but failed to address it."); *White v. Ercole*, No. 06CIV1136, 2009 WL 602890, at *1, 6 (S.D.N.Y. Mar. 3, 2009) ("[Plaintiff] brought this suit under the civil rights statute, 42 U.S.C. § 1983, based on a "slip and fall" incident . . . .  [The] Complaint alleges conduct that amounts to simple negligence, not a violation of a federal constitutional or statutory right."); *Graham v. Poole*, 476 F. Supp. 2d 257, 260 (W.D.N.Y. 2007) ("[A]ll that plaintiff has alleged is that defendants failed to exercise due care in not installing non-slip mats in the shower. That is not enough."); *Davis v. Reilly*, 324 F. Supp. 2d 361, 367 (E.D.N.Y. 2004) ("[F]ailure to provide shower mats does not rise to the level of a constitutional violation within the meaning of Section 1983 . . . ."); *Jones v. Nassau Cnty. Sheriff Dep't*, 285 F. Supp. 2d 322, 323–24 (E.D.N.Y. 2003) ("This lawsuit attempts to convert a routine slip and fall into a case of constitutional dimensions.").

Courts outside the Second Circuit have also found that slip-and-fall cases due to slippery floors do not implicate constitutional rights. *See, e.g.*, *Reynolds v. Powell*, 370 F.3d 1028, 1031

(10th Cir. 2004); *Walker v. Reed,* 104 F.3d 156, 157-58 (8th Cir. 1997); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993). Additionally, the Supreme Court has weighed in on prisoners bringing § 1983 claims for mere negligence by prison officials. In *Daniels v. Williams*, a prisoner brought a § 1983 action against prison officials after he slipped on a pillow left on the stairs. The Supreme Court said the following:

> We think that the actions of prison custodians in leaving a pillow on the prison stairs . . . are quite remote from the concerns [of the Due Process Clause]. Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that an injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

*Daniels v. Williams,* 474 U.S. 327, 332 (1986).

Here Plaintiff has alleged that Deputies Lalley and Franckowiak took down a shower curtain and did not set up warning signs. Plaintiff then took a shower and, because there was no shower curtain, water "spray[ed] everywhere" causing him to slip and fall. ECF No. 1, at 3. He then received prompt medical treatment. ECF No. 13, at 13. In sum, this is a garden-variety tort claim that does not concern basic human needs or constitutional rights. It "suggests no more than a failure to measure up to the conduct of a reasonable person." *See Daniels v. Williams,* 474 U.S. at 332. As a matter of law, Plaintiff cannot state a plausible § 1983 claim against any of the Defendants in this case, including Deputies Lalley or Franckowiak. Accordingly, the Court *sua sponte* dismisses the claims against Deputies Lalley and Franckowiak.

## IV.    State Law Negligence Claim

To the extent the Complaint can be read to include state law tort claims, the Court declines to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3) (stating that the Court may decline to exercise supplemental jurisdiction if the Court has

dismissed all claims over which it had original jurisdiction).   Notably, based on the Prisoner Complaint Form attached to the Complaint, it appears that Plaintiff has indeed already filed a claim arising out of these same facts in state court.  ECF No. 1, at 9.

## V.      Leave to Replead

The Court would generally grant Plaintiff leave to amend or replead the Complaint.  The Second Circuit has emphasized that a court should not dismiss a *pro se* Complaint without granting leave to replead when a liberal reading of it gives any indication that a valid claim might be stated.  *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (quotations and citations omitted).

However, even under a liberal reading of the Complaint, it is beyond doubt that any attempt to replead would be futile.  *See Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's] cause[] of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.").  Removal of a shower curtain, which caused a slippery floor, does not rise to the level of constitutional deprivation.   Accordingly, the Complaint is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Timothy B. Howard's Motion to Dismiss (ECF No. 10) is GRANTED.  Defendant Chris Collins's Motion to Dismiss (ECF No. 27) is GRANTED. Plaintiff's Motion for Extension of Time to Respond to Defendant Chris Collins's Motion to Dismiss (ECF No. 28) is GRANTED.  Plaintiff's Reply Motion to Grant Amended Complaint (ECF No. 29) has been considered and, for purposes of docket control, is GRANTED.  The Court *sua sponte* DISMISSES all of the federal claims against Defendants Lalley and Franckowiak WITH PREJUDICE.  The Clerk of the Court is directed to close this case.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Any request to proceed *in forma pauperis* on appeal should be directed by motion to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

DATED:      Rochester, New York
            October 29, 2015

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court